JOSEPH R. SEGARS vs. SAMUEL SEGARS.

Lincoln.   Opinion December 20, 1880.

*Contract.   Ratification.   Statute of frauds.*

A letter written by one brother to another in relation to the latter's returning home and supporting their parents, but written without their knowledge or request, in which the writer says, "I suppose they would give one-half the farm and hold the other as security for their maintenance while they live," does not bind, nor does it purport to bind the father or any one else.

The remark of the father when the existence of the letter was first brought to his knowledge, that "it was all right and that he intended to carry it out just as it was written there," does not constitute a contract on his part.   Nor is it a ratification of the letter of one, who was acting as an agent, as it did not even purport to propose a contract on his behalf.

Further, the evidence of the father that "he never at any time promised to give him (the son) a deed of the property or any part of it" negatives the idea of a ratification of the letter.

When an agreement in relation to real estate is void by the statute of frauds, the party who has fully complied with its terms is entitled to recover back the payments made, whether in labor or money, if the other party has incapacitated himself from its performance or has refused to perform.

The defendant's declarations to a third person in making a contract, or his statements of the reasons why he made it, are not admissible in evidence in his behalf.

ON EXCEPTIONS AND MOTIONS.

ASSUMPSIT to recover for five years' services on the defendant's farm in Dresden, and for materials furnished, and money expended in and about the care and management of the farm, and the support and maintenance of the defendant and his wife.   The writ was dated May 28, 1878.

The verdict was for plaintiff for $987.16.

The facts sufficiently appear in the opinion.

*A. P. Gould*, for the plaintiff, cited: *Roberts* v. *Swift*, 1 Yates, 209; *Canada* v. *Canada*, 6 Cush. 15; *Wright* v. *Haskell*, 45 Maine, 489.

*W. Gilbert*, for the defendant, contended that the plaintiff had mistaken his remedy if there is any wrong to be remedied.   By the plaintiff's own showing he had a valid contract for a conveyance as the consideration for his services, and he cannot renounce that contract and recover wages.

The letter of January 14, being ratified, contained all the necessary elements of a promise of a conveyance required by the statute of frauds. Nothing is more clear than that, in dealings, language is to be taken in the sense intended and accepted by the parties, although it be not the literal sense of the words used. Chitty Contr. 74, 75, note 1 by Perkins, and authorities cited.

Wesley Segars, the plaintiff, and the defendant, when his attention was called to it, all understood the letter as a proposal or offer from or in behalf of the defendant to the plaintiff, and when the defendant said "that was all right, that he intended to carry out just as it was written there," it constituted a ratification and became binding upon the defendant, and its acceptance by the plaintiff bound him, and the contract was then closed and answered all the requirements of the statute. R. S., c. 111, § 1; Brown, Stat. of Frauds, §§ 385, 359, 350, 364, 370, 392; Benjamin on Sales, 199, 223, *et seq.* note *f.* to § 91, and § 208; note *g.* and authorities cited; *Marsh* v. *Hyde*, 3 Gray, 33; *Packard* v. *Richardson*, 17 Mass. 122; *Levy* v. *Merrill*, 4 Maine, 189; *Gillighan* v. *Boardman*, 29 Maine, 80; *Cummings* v. *Dennett*, 26 Maine, 400; *Atwood* v. *Cobb*, 16 Pick. 227; *Shaw* v. *Nudd*, 8 Pick. 9; *Blood* v. *Hardy*, 15 Maine, 61; Chitty Contr. 313, and cases cited.

The counsel in an able argument contended further that the verdict was against the evidence and excessive, and the rulings of the presiding judge, as stated in the opinion, erroneous.

APPLETON, C. J. This is an action of assumpsit by a son against his father, for work and labor, materials furnished and on the money counts.

It appears in evidence, that the plaintiff, residing in California, received a letter from his brother, Wesley Segars, dated January 14, 1872, containing these words: "I wish you would come home and take care of the old folks. We are entirely spoiled for anything of that kind, indeed we are, and I expected as much before I came from the West. We have had our own way so long, that it has become second nature, and it is so hard to take a new course, and so entirely different from the one you have

been following, and when you are liable to run against a snag at any time. Because, if you have a new plan to bring forward, you must have the assent of the old folks, or the fat is all in the fire at once. Still the old folks must have some one to look after them, and I do really hope that you will come home and take them in your care very soon. I suppose they would give one half the farm, and hold their half, as security for their maintenance while they live," &c.

"Upon the evidence relating to the letter, the defendant requested the court to instruct the jury that if they find from the evidence that the proposition of Wesley Segars, contained in his letter was ratified and agreed to by the defendant as his own, and as such accepted by the plaintiff, the writing is a valid contract binding the defendant to a conveyance of an undivided half of the farm." This instruction was refused and it is insisted that it should have been given.

By R. S., c. 111, § 1, "No action shall be brought and maintained in any of the following cases: . . Fourthly, upon any contract for the sale of lands, tenements or hereditaments, or of any interest in or concerning them . . unless the promise, contract or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and be signed by the party to be charged therewith, or by some person thereto lawfully authorized."

By R. S., c. 73, § 10, no estate or interests in lands, unless created by some writing and signed by the grantor or his attorney, shall have any greater force or effect than an estate or tenancy at will.

The requested instruction refers "to the evidence relating to the letter." That evidence is properly to be considered as bearing upon the requested instruction.

The letter is not signed by the defendant. The writer testifies that it was written without the knowledge or authority of the defendant. Indeed, that is apparent from the context. Here is no promise, contract or memorandum. There does not purport to be any. It was not written for, or at the instance of the defendant. It does not bind him. It does not purport to bind

him. It does not bind anybody. It does not import a contract or an agreement made or proposed. It was the mere supposition of the writer, as he testifies, and nothing more.

Here then is no promise, contract or agreement, no memorandum nor note thereof signed by the party to be charged or by any person thereto fully authorized. There was none intended.

If there had been, there was no sufficient ratification. The defendant testifies that he does "not recollect any conversation with him in respect to his staying with us" . . that he "never at any time promised to give him a deed of the property or any part of it." This negatives all pretence of a ratification, if true.

But, disregarding the defendant's testimony on this most essential point, his learned counsel relies on that of the plaintiff, who testified that shortly after his return, he had a talk with his father and mother about his expectations if he remained with them, and the understanding was that he was to have half of the farm—that he spoke to his father about the letters sent him, saying he should have if he came home, one half of the place, giving him security for the other half, and that he wanted the matter attended to, and that he shew him the letter of January 14, 1872,—that his father said that was all right and he intended to carry it out just as it was all written there.

But this is not evidence that the letter was written by the defendant's authority, or that he ratified or intended to ratify it as the act of an agent, an act then first brought to his knowledge. As was remarked by BRAMWELL, B., in *Murphy* v. *Boes*, 10 L. R. Ex. Cases, 126 : "If he was the defendant's agent, when did the agency commence? Was he agent at the time he wrote? This will hardly be suggested. Did he become agent afterwards by ratification? If so, you would come to this difficulty, that when the agent wrote the paper, he did not profess to act for the defendant."

It will hardly be pretended that at the time of this conversation with his son, he supposed or understood that he was making a new contract or ratifying an old one, or one made by one acting as agent without authority. "I think," remarks BRAMWELL, B., in the case last cited : "that the common understanding is a good.

test of the real meaning of the transaction. Now, is there any reason why we should disregard the understanding of reasonable persons for the sake of avoiding the operation of the statute?"

2. The farm of the defendant was deeded to his son, Wesley Segars, to whom as a witness the following question was proposed by defendant's counsel: "At whose instigation was the farm deeded to you? Answer.—"My father's instigation." What was said between you and your father." The answer to this question was properly excluded. It was to make the defendant's declaration evidence in his own behalf.

3. The answer to the inquiry of the defendant as to —"What brought about the making of the deed to Wesley?" was properly excluded. The inducements to the making of that deed, had nothing to do with the contract between the parties to this litigation.

4. There was an agreement of some sort between these parties in relation to real estate. It was not in writing. It was void by the statute of frauds. In such case, the law is well settled that the party who has fully complied with its terms, is entitled to recover back the payments made, whether in labor or money, if the other party has incapacitated himself from its performance, or has refused to perform. *Jellison* v. *Jordan*, 68 Maine, 373; *Cook* v. *Doggett*, 2 Allen, 439; *Crawford* v. *Parsons*, 18 N. H. 293.

There are no exceptions to any rulings of the court, except those already considered. Those given must be regarded as satisfactory. The evidence as to the various facts in dispute is contradictory. The jury saw and heard the witnesses. They are the recognized judges of its weight, and after a careful examination of the able and ingenious argument of the learned counsel for the defendant, we perceive no sufficient reason for interfering with their conclusion.

*Motion and exception overruled.*

WALTON, BARROWS, DANFORTH, PETERS and SYMONDS, JJ., concurred.